# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico
_____
Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>MOTOROLA DEVICE WITH IMEI 351024743494002<br>AND TELEPHONE NUMBER 505-701-2760,<br>CURRENTLY IN THE CUSTODY OF FBI | )<br>)<br>)    Case No.<br>)<br>)        **24mr2099**<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference.

located in the _____ District of ____New Mexico____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incoporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses committed in Indian Country |
| 18 U.S.C. § 113(a)(3) | Assault with a Dangerous Weapon |

The application is based on these facts:

See attached affidavit submitted by SA Lorraine hardy and approved by AUSA Mark Probasco.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Hardy*
_____
*Applicant's signature*

Lorraine Hardy, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__Telephonically Sworn and Electronically Signed__ *(specify reliable electronic means)*.

Date: __11/13/2024__

*/s/ B. Paul Briones*
_____
*Judge's signature*

City and state: __Farmington, New Mexico__      B. Paul Briones, United States Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:** BLACK MOTOROLA DEVICE WITH IMEI 351024743494002 AND TELEPHONE NUMBER 505-701-2760, CURRENTLY IN THE CUSTODY OF THE FEDERAL BUREAU OF INVESTIGATION IN FARMINGTON, NEW MEXICO. | Case No. _____ |

## AFFIDAVIT

I, Lorraine Hardy, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(c)(1)(A) for a search warrant authorizing the examination of property— a Black Motorola phone, hereinafter "Device"—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. The facts in this affidavit come from my personal observations and participation in this investigation, my training and experience, and information obtained from other investigators and witnesses. This affidavit is being submitted for the limited purpose of securing a search warrant, so I have not included each and every fact known to me

1

concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause for the requested warrant.

3. I am currently serving as an FBI Special Agent assigned to the FBI, Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes that occur in Indian Country to include homicide, aggravated assault, child sexual assault, kidnapping and rape. I received law enforcement training at the FBI Academy in Quantico, Virginia. I have been with the FBI for approximately six years. I received on the job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects and witnesses, writing affidavits for executing search warrants and arrest warrants, examining cellular telephones, managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting evidence and analyzing public records.

## JURISDICTION

4. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a black Motorola cellular telephone with IMEI number 351024743494002 and cellular telephone number 505-701-2760 (hereinafter "the

Device"). The Device is currently located in evidence at the Federal Bureau of Investigation office in Farmington.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. On or about November 2, 2024, at approximately 10:49 a.m., the Farmington Resident Agency of the FBI was notified by Navajo Nation Department of Criminal Investigations (NNDCI) of a woman (hereinafter referred to as JANE DOE), year of birth 1996, was physically assaulted and hit by a vehicle in Beclabito, New Mexico and taken to Northern Navajo Medical Center (NNMC) in Shiprock with injuries.

8. JANE DOE was interviewed by law enforcement at approximately 12:00 p.m. at NNMC. It was learned JANE DOE was traveling home with her sister, (hereinafter referred to as N.S.), year of birth 1983, to Phoenix, Arizona. N.S. was driving and JANE DOE was in the front passenger seat. Due to road construction and a single lane road ahead, N.S. stopped at a construction stop light in Beclabito, to await the green light. JANE DOE saw her ex-boyfriend JOHNSON pass them in his Toyota Sequoia. JOHNSON turned around and stopped his vehicle behind N.S.'s vehicle. JANE DOE observed JOHNSON get out of his vehicle and start climbing into the back of N.S.'s vehicle. JANE DOE got out to talk to JOHNSON. JOHNSON did not say anything to JANE DOE but grabbed her by the neck and shoulders and started hitting her with his fists in the head. JOHNSON then stabbed JANE DOE in the abdomen with a black knife approximately eight inches long. JOHNSON got back into his vehicle and drove forward striking JANE DOE with his

3

vehicle and knocking her down. JOHNSON reversed and sped off. JANE DOE stated she was afraid of JOHNSON and was concerned he would return to hurt her.

9. JANE DOE believed JOHNSON was angry because she and her children left him. JOHNSON had been trying to contact JANE DOE on her cell phone all morning, but she did not respond to him.

10. Your affiant observed JANE DOE in the Emergency Room during the interview. JANE DOE was lying flat on her back and was covered with blankets. JANE DOE had abrasions on her forehead, bruises and cuts on her right knee and both ankles. JANE DOE stated she had multiple bumps to the back of head and experienced pain when moving her jaw. I also observed a stab wound to JANE DOE's abdomen approximately two inches wide and what appeared to be blood on JANE DOE's hospital gown around her abdomen. JANE DOE had red marks on both the right and left sides of her neck. After being asked, JANE DOE stated she experienced incontinence during the incident. JANE DOE stated her pain level was an eight on a scale of one to ten.

11. Navajo Police Department (NPD) officers later located JOHNSON's vehicle, which they recognized because the front bumper had fallen off after striking JANE DOE. JOHNSON attempted to flee several times from officers but eventually stopped in Cudei, New Mexico. JOHNSON was taken into custody without incident. NPD officers located a black folding pocketknife in JOHNSON's front pants pocket and a black cellular phone (herein after referred to as the "Device") in the other front pocket. Both items were seized and later transferred to FBI evidence pending a search warrant and laboratory analysis.

12. After an interview with Emergency Room Doctor, (hereinafter referred to as C.N.) it was learned JANE DOE sustained abrasions and bruising to her forehead, right knee,

both ankles and around her neck. JANE DOE had a stab wound to her abdomen of which C.N. was not certain of the severity yet. C.N. stated he believed JANE DOE may have lost consciousness at some point and may have a concussion. C.N. stated JANE DOE's injuries are potentially life threatening and he would know more after receiving the results of her C.T. scan.

13. At approximately 1:30 p.m. your affiant and Navajo Nation Department of Criminal Investigation (NNDCI), Criminal Investigator (CI), Jefferson Joe interviewed JOHNSON at the NPD station in Shiprock, New Mexico. Prior to the interview NPD officers provided your affiant with a Breath Alcohol Test for JOHNSON which read 0.00 for alcohol. JOHNSON was read his Miranda Rights and agreed to speak with law enforcement.

14. JOHNSON stated he had been broken up with JANE DOE for approximately six months. They had two kids together, so JOHNSON regularly stopped by to visit and also had JANE DOE's house key. Around, 7:30 a.m. JOHNSON stopped by JANE DOE's residence in Tees Nos Pos, Arizona, to visit his children but JANE DOE was not there. JOHNSON attempted to contact JANE DOE on her cell phone multiple times stating he wanted to get back with JANE DOE. JANE DOE did not respond to JOHNSON's calls or messages. JOHNSON's brother had called and told him JANE DOE had taken their washing machine and left. JOHNSON left JANE DOE's house and passed JANE DOE and her sister on the Hwy in Beclabito. JOHNSON pulled up behind JANE DOE and attempted to get the washing machine from the back of N.S. vehicle. JANE DOE got out and they "got into it". JOHNSON told JANE DOE he just wanted to see his kids; JANE DOE agreed but JOHNSON did not believe her.

15. JANE DOE grabbed JOHNSON and JOHNSON grabbed JANE DOE. JOHNSON tried to hit JANE DOE but missed. JOHNSON admitted to kicking JANE DOE, but after seeing the situation he was causing, he stopped and tried to drive away. While driving away JOHNSON "bumped" JANE DOE with his vehicle and knocked her down. JOHNSON stated maybe JANE DOE jumped in front of his vehicle but later said "I don't think she did". JOHNSON later stated he did make contact with JANE DOE with his fist, because his knuckles on his right hand were hurting. JOHNSON stated he was sorry and regretted his actions.

16. JOHNSON stated JANE DOE has violent tendencies and has threatened JOHNSON that she would go to his grandmother's house and break all the windows. JANE DOE also told JOHNSON over text message that she hoped he died.

17. JOHNSON admitted to owning and carrying a knife but would never stab anyone. JOHNSON stated the front bumper on his vehicle was already messed up from before and was zip tied on. JOHNSON stated the bumper got loose after hitting JANE DOE.

18. JOHNSON stated he no longer wanted to speak and that concluded his interview.

19. The reported incident took place on Hwy 64 of Beclabito, New Mexico, GPS coordinates 36.832499, -109.020870, which is within the exterior boundaries of the Navajo Nation.

20. JOHNSON and JANE DOE are certified member of the Navajo Nation.

21. Based on information provided within this affidavit, your affiant believes that evidence of a crime can be found by conducting a search of the Device related to the communications with JANE DOE, and conversations or other communication that discuss JOHNSON's actions and whereabouts related to the incident. I believe the Device may

6

also identify a timeline of events leading up to, during and after the incident. As well as identify anyone else JOHNSON may have associated with prior to incident and who might be witnesses to JOHNSON's actions.

22. The Device is currently in the possession of the FBI and has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Device was first seized.

## **TECHNICAL TERMS**

23. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless Device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may

7

also include global positioning system ("GPS") technology for determining the location of the Device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage Device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation Device uses the Global Positioning System to display its current location. It often contains records the locations where it

8

has been. Some GPS navigation Devices can give a user driving or walking directions to another location. These Devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

24. Based on my training, experience, use, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, and portable media player. In my training and experience, examining data stored on Devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used a particular Device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic Devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Device. This information can sometimes be recovered with forensics tools.

26. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a Device can also indicate who has used or controlled the Device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic Device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic Devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer

behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a Device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

28. *Manner of execution.*  Because this warrant seeks only permission to examine a Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29. Based on the facts set forth in this affidavit, there is probable cause to believe JOHNSON violated federal criminal statute, of 18 U.S.C. § 1153, crimes committed in Indian Country, 18 U.S.C. § 113(a)(3) assault with a dangerous weapon, with intent to do bodily harm. Therefore, I submit that this affidavit supports probable cause for a warrant to search the Device described in Attachment A and seize the items described in Attachment B. Evidence sought in Attachment B may serve to inculpate or exculpate JOHNSON and are critical to the unfolding investigation.

11

30. Assistant United States Attorney, Mark A. Probasco has approved this application.

31. I swear that this information is true and correct to the best of my knowledge and belief.

                                                    Lorraine Hardy, Special Agent
                                                    Federal Bureau of Investigation

Electronically SUBSCRIBED and telephonically SWORN to me this 13th day of November 2024.

B. Paul Briones
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A
### Property to Be Searched

The property to be searched is described as follows:

1. Black Samsung cellular telephone identified as a black Motorola cellular telephone with IMEI number 351024743494002 and cellular telephone number 505-701-2760 ("the Device"), which is currently in the secure custody of the Federal Bureau of Investigations in Farmington, New Mexico.

2. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B
### Particular Things to Be Seized

1. All records and information on the Device described in Attachment A that relate to violations of relating to violations of 18 U.S.C. § 1153, crimes committed in Indian Country, 18 U.S.C. § 113(a)(3) assault with a dangerous weapon, with intent to do bodily harm including:

    a. Archived, saved, or stored telephone numbers, voicemail, electronic mail, text messages, social media messages, or photographs, either saved to the storage media card or other internal storage device.

    b. Any files that contain information saved in the cellphone's Settings, User Information, Contact Lists, Recent Calls, Missed Calls, Calls Received.

    c. Photographs, videos, text messages, audio messages, or recordings concerning Jane Doe and JOHNSON.

    d. Any information pertaining to JOHNSON's, associates, or activities, involved in said incident, including names, addresses, phone numbers, text messages, photographs, videos, emails, or any other identifying information.

    e. Any information pertaining to the location of the device in relation to the incidents described above.

    f. Cellular telephone account information, credit card payment information, financial records pertaining to the account and any other details pertaining to the account(s) established within the Device.

2

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Information to be Seized by the Government**

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.